UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; AND CHARLES A. WHOBREY, as Trustee,<br><br>Plaintiffs,<br><br>v.<br><br>SHEETS ENTERPRISE, INC., F/K/A RAPID INDUSTRIES, INC., a Kentucky Corporation,<br><br>Defendant. | No. 24 CV 2277<br><br>Judge Georgia N. Alexakis |

### MEMORANDUM OPINION AND ORDER

Defendant Sheets Enterprises ("Sheets"), a Kentucky corporation, had an agreement with a local Teamsters union to contribute to plaintiff Central States, Southeast and Southwest Areas Pension Fund ("Central States") on behalf of certain Sheets employees. Sheets voluntarily dissolved pursuant to Kentucky law in June 2017. In November 2023, however, Central States sent a notice and demand for payment of withdrawal liability under the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. § 1001, *et seq.* Sheets now moves to dismiss, arguing that the Court lacks personal jurisdiction over the dissolved company because it cannot be sued and that even were Sheets subject to suit, Central States sent its demand too late.

For the following reasons, Sheets's motion to dismiss [19] is denied.

I.   **Legal Standards**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court must accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor (as the Court does in the section that follows), but a court need not accept legal conclusions, or "threadbare recitals" supported by "conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Under Rule 12(b)(2), a court may dismiss a claim for lack of personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). A complaint need not include facts alleging personal jurisdiction. But once the defendant moves to dismiss the complaint under Rule 12(b)(2), the plaintiff must demonstrate that personal jurisdiction exists. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

II.   **Background**

Sheets, formerly known as Rapid Industries, Inc., paid into a multiemployer plan pension fund—Central States—pursuant to a collective bargaining agreement with a local Teamsters Union. [1] ¶ 9. Around September 16, 2016, Sheets "permanently ceased to have an obligation to contribute to the Pension Fund and/or permanently ceased all covered operations." *Id.* ¶ 10. This was a "complete

withdrawal"[1] from a multiemployer plan, *see* 29 U.S.C. § 1383, which under ERISA triggers an obligation to pay "withdrawal liability" in the amount of the company's share of the plan's unvested benefits, *id.* §§ 1381, 1391. Central States calculates that liability at $675,539.59. [1] ¶ 11.

Sheets voluntarily dissolved in June 2017 after selling its assets to another company. [20-3]. But Central States did not learn about either the complete withdrawal or Sheets's dissolution before May 2023, almost six years later. [29-2] ¶ 4.[2] After discovering the complete withdrawal, Central States sent a notice and demand for payment of withdrawal liability to Sheets pursuant to 29 U.S.C. §§ 1382(2) and 1399(b)(1), which was received on November 16, 2023. [1] ¶ 12. While ERISA allows an employer to initiate arbitration to dispute the amount of withdrawal liability, *see* 29 U.S.C. § 1401(a)(1), Sheets did not do so, and has not remitted any money to Central States. *Id.* ¶¶ 14–15.

---

[1] Sheets concedes that there was a "complete withdrawal" for the purpose of ERISA. *See* [20] at 13.

[2] The affidavit Central States relies on for this point [29-2] was not attached to its complaint, but because its new elaborations on the factual allegations are consistent with the initial pleadings, there is no issue with the Court considering the affidavit as part of Central States's opposition to Sheets's motion to dismiss. *See Kuebler v. Vectren Corporation*, 13 F.4th 631, 636 (7th Cir. 2021). *See also Courtney v. Butler*, 66 F.4th 1043, 1046 (7th Cir. 2023). And although these details do not factor into its analysis, the Court notes that Central States has explained the delay in sending its notice and demand in the following manner: Sheets was known as Rapid Industries, Inc. until 2016, when it sold its assets. *See* [20-2]. The purchaser of Sheets's assets also operated under the name Rapid Industries and continued paying into the Central States pension fund under that name until 2023. [29-2] ¶ 4. The end of those payments triggered Central States's May 2023 investigation into Sheets's withdrawal liability, which in turn resulted in the November 2023 notice of withdrawal liability. *Id.* ¶¶ 8–10.

On March 20, 2024, Central States sued Sheets in federal court, arguing that because it failed to request review for withdrawal liability, Sheets had waived any right to arbitrate and therefore owed Central States the full withdrawal liability amount demanded in the November 2023 notice ($675,539.59). *Id.* ¶ 14. Sheets now moves to dismiss, *see* [19], arguing that as a dissolved corporation it lacks the capacity to be sued for the withdrawal liability, and that in any event Central States has not plausibly alleged that it sent the notice and demand "as soon as practicable," as required by ERISA. [20] 1–2; 29 U.S.C. § 1399(b)(1).

## III. Analysis

### A. Rule 17(b)(2) and Personal Jurisdiction

The Court addresses jurisdiction first. Sheets argues that the Court lacks personal jurisdiction because as a dissolved corporation it simply lacks the capacity to be sued. [20] at 5–6. A corporation's capacity to be sued in federal court is determined "by the law under which it was organized." Fed. R. Civ. P. § 17(b)(2). The parties agree this rule means this question is decided by Kentucky law. [20] at 5–7; [29] 10–11. And Central States does not dispute that Sheets executed the appropriate articles of dissolution under Kentucky law on May 31, 2017, *see* [20-6], so it is currently dissolved as far as Kentucky is concerned.

But dissolution is not necessarily the same thing as losing the capacity to be sued. It is true that "[a]t common law a corporation could not sue or be sued upon dissolution," *Weiss v. Wark*, 202 F.3d 276 (7th Cir. 1999), and the dissolution of a corporation was "likened to the death of a natural person," *United States v. P. F.*

4

*Collier & Son Corp.*, 208 F.2d 936, 937 (7th Cir. 1953) (cleaned up). But unlike a natural life, a corporate life can be prolonged by statute. *Id.* at 937. ("There must be some statutory authority for the prolongation of its life, even for litigation purposes.") And Kentucky law expressly provides that "[a] dissolved corporation *shall continue its corporate existence.*" KRS § 271B.14-050 (emphasis added); *see also United States v. B & D Vending, Inc.*, 02-342-KSF, 2003 WL 21760991, at *4 (E.D. Ky. June 13, 2003). ("Thus, after a Kentucky corporation has been ... dissolved ... the corporation continues its corporate existence."). The Kentucky statute does not provide for an end to this continued existence; a Kentucky corporation is in some sense immortal.

What the dissolved Kentucky corporation loses is thus not its corporate existence but rather the ability to "carry on any business *except that appropriate to wind up and liquidate its business and affairs*," including "discharging or making provision for discharging its liabilities." KRS § 271B.14-050(1)(c) (emphasis added). As Central States notes, the Kentucky "survival statute" governing dissolved corporations expressly provides that "[d]issolution of a corporation shall not … prevent commencement of a proceeding by or against the corporation in its corporate name." *Id.* § 271B.14-050(2)(e); [29] at 10. A dissolved Kentucky corporation can therefore "sue or be sued" for the purpose of Rule 17(b)(2): the corporation still exists, and proceedings by or against the corporation can still commence.

The analysis does not end on that note, however. Under Kentucky law, the allowable "winding up" activity in which the dissolved corporation can engage includes the disposal of claims against it. *See id.* §§ 271B.14-060, 271B.14-070. Sheets

argues that because it has properly disposed of any claims against it, it can no longer be sued under Rule 17(b)(2). [20] at 6–7. Specifically, one method a dissolved corporation can employ under Kentucky law to dispose of claims against it is to publish notice of its dissolution in a newspaper meeting certain requirements; if the dissolved corporation does so, certain claimants have two years from the notice's publication date to sue. *See id.* § 271B.14-070(3). Sheets did publish such a notice, *see* [20-7], and as noted earlier, Central States sent its demand for payment of withdrawal liability to Sheets well past the two-year deadline triggered by the publication. Relying on *Citizens Elec. Corp. v. Bituminous Fire & Marine Ins. Co.*, 68 F.3d 1016, 1020 (7th Cir. 1995), Sheets contends that "[w]here a state statute provides that claims against a dissolved corporation must be commenced within a certain time frame, the expiration of that time frame means that the dissolved corporation lacks capacity to be sued" for the purpose of Rule 17(b)(2). [20] at 6.

There are three problems with Sheets's reliance on *Bituminous*, however. First, while *Bituminous* discusses the application of Rule 17(b)(2) to a dissolved Illinois corporation, it ultimately did not reach the issue because the federal claim there was timely under the Illinois statute. Second, the Illinois and Kentucky survival statutes differ in an important respect: unlike Kentucky, the Illinois survival statute provides that the "[d]issolution of a corporation *terminates its corporate existence.*" 805 ILCS 5/12.30. So unlike a dissolved Kentucky corporation, a dissolved Illinois corporation is mortal. Third, the Illinois statute at issue in *Bituminous* put a five-year deadline on *all* claims by or against the dissolved corporation, regardless of

6

notice. *See Sharif v. International Development Group Co., Ltd.*, 399 F.3d 857, 860 (7th Cir. 2005) (citing *Bituminous*, 68 F.3d at 1018) (five years the "outer limit" for suits by or against dissolved Illinois corporation). Kentucky does not have an equivalent provision. Unlike the Illinois statute, nothing in the Kentucky statutes cited would strip Sheets of its affirmative ability to bring a suit to "wind up" its affairs at any point in time. Rather, as Sheets notes, the Kentucky provisions at issue are "permissive, rather than mandatory" options for disposing of claims against the corporation by notice. [30] at 3.

In short, the Kentucky statute indicates that a dissolved Kentucky corporation can continue to sue or be sued, *see Bear, Inc. v. Smith*, 303 S.W.3d 137, 145 (Ky. Ct. App. 2010) ("Generally, for the purpose of being sued, a corporation is deemed to exist until its debts are paid."), and *Bituminous* does not say otherwise.[3] Rule 17(b)(2) and personal jurisdiction are therefore not at issue.

**B. Timeliness of the ERISA Claim**

The Court now turns to the next aspect of the parties' dispute: whether the particular ERISA *claim* Central States wishes to bring is time-barred by Kentucky law. Sheets argues that because it published notice of its dissolution in accordance

---

[3] Sheets also relies on *Sanyo N. Am. Corp. v. Absocold Corp.*, No. 1:06CV0405-LJM-WTL, 2008 WL 656044 (S.D. Ind. Mar. 6, 2008), which concluded that Rule 17(b) barred suit against a dissolved corporation under an Indiana survival statute that is substantially similar to the Kentucky statute at issue here. *See* Ind. Code § 23-1-45-7. But *Sanyo* does not address either the permissive "may" language of the statute or the continued existence of a dissolved Indiana corporation, *see* Ind. Code § 23-1-45-5(a), so does not change the Court's analysis. Additionally, as with *Bituminous*, *Sanyo* involved a claim not under ERISA but rather a different federal statute which, as discussed below, changes the analysis of whether a state-law statute of limitations applies to the federal claim.

7

with KRS § 271B.14-070, any and all claims against it are now barred. [20] at 3. For its part, Central States contends that because Sheets should have known about its obligation to pay withdrawal liability it was obliged to provide Central States with a written notice of dissolution per KRS § 271B.14-060(b)(2) before any claims could be barred. Since Sheets did not do that, Central States asserts the clock on its claim has yet to start under Kentucky law.

But before interpreting Kentucky law, the Court looks at the federal law at issue. Per ERISA, the provisions of the subchapter Central States sues under, *see* 29 U.S.C. § 1132(a), "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144.[4] This is "deliberately expansive language, conspicuous for its breadth," because "Congress clearly intended ERISA preemption to be broad." *Halperin v. Richards*, 7 F.4th 534, 540 (7th Cir. 2021) (cleaned up). The Seventh Circuit explains that for the purpose of preemption, the phrase "relate to" encompasses "a state statute or claim that, while not facially tied to ERISA, governs ... a central matter of plan administration or interferes with nationally uniform plan administration." *Id.* Put another way, "State laws that directly prohibit something ERISA permits, and vice versa, fall into this ... category." *Id.* at 541.

ERISA allows claims regarding withdrawal liability to be brought either within "6 years after the date on which the cause of action arose" or else "3 years after

---

[4] 29 U.S.C.A. § 1144(b) provides certain exemptions to ERISA preemption, but none apply to this case.

the earliest date on which the plaintiff acquired or should have acquired actual knowledge of the existence of such cause of action." 29 U.S.C. § 1451(f). Central States alleges that it became aware of the withdrawal liability in May 2023 and filed the instant suit less than a year later. [29-2] at 4. This would make the suit timely under federal law. But if the Court assumes arguendo that Sheets's newspaper publication did provide adequate notice, the suit would be time-barred under Kentucky law.

In its surreply, Central States argues that the ERISA statute of limitations would preempt conflicting state laws, including the Kentucky provision upon which Sheets relies. [31-1] at 11.[5] The Court agrees. The Seventh Circuit has not weighed in on whether the ERISA statute of limitations preempts state law, but as noted above, the appeals court has emphasized that "Congress clearly intended ERISA preemption to be broad." *Halperin,* 7 F.4th at 540. The Kentucky law at issue also "directly prohibit[s] something ERISA permits"—lawsuits brought up to six years after an ERISA claim arises—and thus "relate[s] to" ERISA, weighing in favor of preemption. *Id.* at 540–41. Likewise, preemption would promote "nationally uniform plan administration," *id.* at 540, because relying on the state survival statutes to govern ERISA claims could provide different results in different states.

---

[5] Because Sheets never opposed Central States's motion for leave to file a surreply [31], the Court treats the motion as unopposed and grants it. Even if Sheets had opposed Central States' motion, the Court's decision to permit a surreply remains within its discretion, *see Johnny Blastoff, Inc. v. L.A. Rams,* 188 F.3d 427, 439 (7th Cir. 1999), and the Court may exercise that discretion to allow the filing of a surreply when doing so "provides the court with the information necessary to make an informed decision." *See Univ. Healthsystem Consortium v. UnitedHealth Grp., Inc.*, 68 F. Supp. 3d 917, 922 (N.D. Ill. 2014) (citing *In re Sulfuric Acid Antitrust Litig.,* 231 F.R.D. 320, 329 (N.D. Ill. 2005)).

9

While the Seventh Circuit has not yet considered the issue, the Ninth Circuit has concluded that ERISA preempts a Montana non-claim statute in the context of withdrawal liability suits. *See Board of Trustees of Western Conference of Teamsters Pension Tr. Fund v. H.F. Johnson Inc.*, 830 F.2d 1009, 1016 (9th Cir. 1987). At least one other district court within the Seventh Circuit has adopted the Ninth Circuit's approach. *See Lysengen on behalf of Morton Buildings, Inc. Leverage Employee Stock Ownership Plan v. Argent Tr. Company*, 20-1177, 2022 WL 854818, at *4 (C.D. Ill. Mar. 22, 2022) ("The Court agrees with the Ninth Circuit's assessment that since Congress expressly provided a limitations period to this provision it considered the period of limitations applicable to such actions essential to enforcement of employer obligations."); *see also Central States, Southeast and Southwest Areas Pension Fund v. Minneapolis Van & Warehouse Co.*, 764 F. Supp. 1289, 1297 (N.D. Ill. 1991) (not reaching the issue but "observing … that there is a great deal of force to the argument that the shorter Minnesota statute would be preempted by the six-year statute of limitations that Congress has expressly prescribed for actions to collect ERISA withdrawal liability").

Of course, *Bituminous* considered that the timing of the federal claim—brought under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA)—was governed by the Illinois survival statute rather than by federal law. *Bituminous*, 68 F.3d at 1019. But *Bituminous* again does not help Sheets. CERCLA expressly declines to preempt state statutes of limitations unless the state statute "provides a commencement date which is earlier than the federally required

10

commencement date," in which case the later federal date is used. 42 U.S.C.A. § 9658(a). *Bituminous* is thus significantly distinguished.

Finally, Sheets argues that Central States's ERISA claim should be dismissed because Sheets was never sent a valid notice of withdrawal liability. [20] at 11 ("[T]the Fund's notice was not adequate because the entity to which the Fund sent the notice … was no longer susceptible to any claims at all against it."); [30] at 10–12. But this argument relies entirely on a conclusion that the Court has already rejected: that Sheets lacked the capacity to be sued at all. And whether Central States sent notice "as soon as practical," [20] at 2, is a factual question that the Court cannot resolve at this stage. Central States has plausibly alleged that it sent notice a few months after discovering the withdrawal for the first time; that is enough at this stage of litigation.

### IV. Conclusion

For the foregoing reasons, Central States's motion for leave to file a surreply [31] is granted, and Sheets's motion to dismiss [19] is denied.

Sheets is directed to answer Central States' complaint on or before 3/21/25. On or before 4/4/25, the parties are directed to submit a joint status report (1) proposing a schedule for discovery, and (2) noting any interest by the parties to pursue settlement.

_____
Georgia N. Alexakis
United States District Judge

Date: 2/19/25